IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Randall Smith,

      Plaintiff,

      v.                                    Case No. 2:13-cv-56

The Ohio Department of
Jobs and Family Services,

      Defendant.


OPINION AND ORDER

      This is an employment discrimination action filed by plaintiff Randall Smith against his employer, the Ohio Department of Jobs and Family Services ("the Department"), an agency of the State of Ohio. In Count 1 of the complaint, plaintiff asserts a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., alleging disparate treatment based on his male sex. Plaintiff contends that despite the fact that he was assigned additional duties previously performed by female employees, he was not promoted to a higher pay range and did not receive wage supplements, while other female employees in his office did receive promotions or wage supplements. In Count 2 of the complaint, plaintiff asserts a claim under the Equal Pay Act, 29 U.S.C. §206, alleging that the Department paid him less than female employees for equal work.

This matter is before the court on the Department's motion for summary judgment.

## I. Summary Judgment Standards

      "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, by showing that the materials cited do not establish the absence or presence of a genuine dispute, or by demonstrating that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(A) and (B).  In considering a motion for summary judgment, this court must draw all reasonable inferences and view all evidence in favor of the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Am. Express Travel Related Servs. Co. v. Kentucky, 641 F.3d 685, 688 (6th Cir. 2011).

The moving party has the burden of proving the absence of a genuine dispute and its entitlement to summary judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden of showing the lack of a genuine dispute can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial.  Id.  Once the moving party meets its initial burden, the nonmovant must set forth specific facts showing that there is a genuine dispute for trial.  Id. at 322 n. 3.  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  Niemi v. NHK Spring Co., Ltd., 543 F.3d 294, 298

2

(6th Cir. 2008).  A fact is "material" only when it might affect the outcome of the suit under the governing law.  <u>Id</u>; <u>Anderson</u>, 477 U.S. at 248.

The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts[.]" <u>Matsuchita</u>, 475 U.S. at 586.  A mere scintilla of evidence is not enough. <u>Anderson</u>, 477 U.S. at 252; <u>Ciminillo v. Streicher</u>, 434 F.3d 461, 464 (6th Cir. 2006).  Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  <u>See</u> Fed. R. Civ. P. 56(c)(3)(noting that the court "need consider only the cited materials").

II. Factual Background

The Department has almost 3,000 employees, and is responsible for supervising Ohio's public assistance, workforce development, unemployment compensation, child and adult protective services, adoption, child care, and child support programs.  Plaintiff began his employment with the Department in 1995, and held the positions of Personnel Officer 2, Management Analyst Supervisor 1, and Management Analyst Supervisor 2.  After a five-year leave of absence on disability retirement, plaintiff returned to the Department in 2009, and was assigned to the position of management Analyst Supervisor 2, Asset Manager, in the Information Management ("IM") Section of the Employee and Business Services Department. Plaintiff's duties included overseeing the Department's asset management program and properly accounting for all state-owned property.

In August of 2010, plaintiff discovered that significant assets, including computer servers, laptop computers and network components were unaccounted for and he filed a complaint with the Office of the Inspector General, which later located the assets during its investigation. Plaintiff's supervisor, Section Chief James Lowe, concluded that plaintiff referred the matter to the Inspector General's Office because he did not want to look for the lost assets himself. Lowe also determined that plaintiff had "poisoned" the IM Section's working relationship with the Office of Information Services by alienating employees of that office. Lowe Dep., pp. 28, 103-104. Lowe issued a corrective counseling memorandum to plaintiff and re-assigned plaintiff's asset management duties to another male employee. Although Lowe sought to have plaintiff reassigned to another section because plaintiff no longer had sufficient pay grade 14 work to perform following the loss of his asset management duties, Lowe was told that plaintiff would not be re-assigned, and that Lowe had to find other work for plaintiff within the IM Section. Plaintiff remained a Management Analyst Supervisor 2, pay grade 14. Lowe moved plaintiff into a performance management role and attempted to create an Operations Manager position for plaintiff in the IM Section by assigning him additional tasks to supplement the available pay grade 14 work. However, Lowe had a difficult time finding sufficient tasks, particularly grade 14 duties, for plaintiff to perform.

In 2011, plaintiff informed Lowe that he was looking for promotional opportunities outside the IM Section because he felt that the duties assigned to him were inconsistent with his job classification and pay grade. Lowe advised plaintiff to identify

positions that were of interest to him, and stated that he would try to help plaintiff to obtain a lateral transfer. Plaintiff located a vacant Management Analyst 2 position, pay grade 14, in the Veteran Services section of the Workplace Development Office which had not yet been posted. At Lowe's request, plaintiff provided a qualification summary which Lowe forwarded. Plaintiff later asked Lowe again about the vacant position, and Lowe informed him that he had not heard anything back. Approximately three or four months later, the position was posted, but plaintiff did not apply for the position, and it was awarded to a male. Plaintiff also expressed interest in transferring to the Office of Information Services. However, Chief Operations Officer Sonnetta Sturkey did not approve the transfer because she had a policy against transferring employees unless there was a specific departmental need. Lowe also considered creating a project manager position which would be funded by the Employee and Business Services Department and other departments, but this position was never approved.

In March of 2011, Classification and Compensation Manager Nancy Jancso-Kocarek requested that all IM Section employees complete a Position Description Questionnaire ("PDQ") to ensure that all employees were properly classified. Plaintiff completed the questionnaire, which was then forwarded to Lowe to fill in the supervisor portion of the questionnaire. Lowe indicated on the form that plaintiff's job duties as IM Operations Manager included: monitoring section operations; assembling performance management tools; collecting and analyzing performance data; building inspection; identifying security and safety issues; turning in

5

excess property; and performing other duties as assigned.  Lowe noted that plaintiff was in a new position and that some of his job duties had been recently developed.  Plaintiff was then permitted to provide rebuttal comments.  Although Lowe did not inform plaintiff that the evaluation process would result in plaintiff being promoted to pay grade 15, Lowe led plaintiff to believe that this was a possibility.  Lowe, as the section chief, was the only pay grade 15 employee in the IM Section.  There were no pay grade 15 vacancies in the section at that time.

During the PDQ process, Lowe assigned additional duties to plaintiff.  These including: filling in for Holly Howard (Administrative Officer 2, pay grade 14) while she was on disability leave for four months in 2011; performing warehouse management duties plaintiff believed should have been assigned to Beth Curry (Visual Communications Manager, pay grade 13); a special project involving the consolidation of Howard's operations from three facilities into one facility, which plaintiff believed fell within the scope of job responsibilities belonging to Teri Ziegler (Business Operations Manager 1, pay grade 12); filling in for Beth Curry while she was on disability leave; and serving as Lowe's administrative assistant.

On December 6, 2011, Lowe was advised of the results of the PDQ study, which included the finding that plaintiff was properly classified as a Management Analyst Supervisor 2, pay grade 14.  The results of the study were officially released on December 23, 2011.  The study concluded that plaintiff should not be upgraded to a pay grade 15 because all of the duties he performed were at a pay grade 14 level.  No other employees in the IM Section were upgraded from

6

a pay grade 14 to a pay grade 15 as a result of the PDQ study. Plaintiff told Employee and Business Services Department Deputy Director Carolyn Borden-Collins that he was disappointed with the results of the PDQ study in light of his assumption of additional responsibilities. Borden-Collins stated that she would speak with Chief Operations Officer Sonnetta Sturkey about plaintiff's concerns, but plaintiff did not follow up on his inquiries with Borden-Collins.

Following the PDQ study, Lowe continued to search for additional duties for plaintiff to perform in an effort to further develop plaintiff's position. Lowe decided to consolidate duties previously shared by Howard, Curry, Ziegler, Kathy Forrest (Management Analyst Supervisor 1, pay grade 12) and Yvonne Robertson (pay grade 30, union bargaining unit member), and to assign those duties to plaintiff. These duties involved purchase orders and contracts, and included the responsibility for developing contracts and bid documents. Plaintiff was designated as the opening manager who handled calls from employees calling off for the day. Plaintiff was assigned to assist other managers with problematic employees. Plaintiff was also assigned the task of being the facility liaison for the Department's Integrity Drive location. This job involved occasionally reporting maintenance issues, such as heating, air conditioning, or electrical problems, by phone call or email to Teri Ziegler, Business Operations Manager of the Facilities Operations Department of the Employee and Business Services Department. These extra duties were consistent with or below the duties of plaintiff's pay grade 14.

Employees of the Department can qualify for a temporary work

level ("TWL") if they assume the duties of a vacant position that is in a higher pay grade. Lowe Dep., p. 76. Plaintiff admitted that he did not qualify for a TWL. Smith Dep., p. 84. Employees can also qualify for a temporary work adjustment ("TWA"). Lowe testified that a TWA could be allowed for temporarily performing the work duties of a higher pay grade position which was not vacant. Lowe Dep., pp. 76-77. Plaintiff thought that a TWA would be available if an employee performs some of the duties of a person in a position with the same or higher pay grade. Smith Dep., p. 83. However, he acknowledged that he did not request a TWA. Smith Dep., p. 85.

After Holly Howard (pay grade 14) was killed in an automobile accident on March 17, 2012, Kathy Forrest (Management Analyst Supervisor 1, pay grade 12) was issued a TWL to perform Howard's duties. Because Forrest had difficulty completing the duties of both positions, Lowe assigned some of Forrest's duties to plaintiff in an effort to evenly distribute the work. In November, 2012, Lowe retired, and Nicholas Linn, his successor, promoted Forrest into Howard's position on a permanent basis.

The record also indicates that in February of 2012, Lisa Endicott was promoted from the position of Management Analyst 1, pay grade 12, to Management Analyst 2, pay grade 14. At the time of her promotion, Endicott worked in a different section of the Employee and Business Services Department than plaintiff, and had a different supervisor. From September 12, 2011, through February 23, 2013, Cynthia Tuttle (Management Analyst Supervisor 1, pay grade 12) received a TWL for assuming the duties of a vacant Management Analyst Supervisor 2, pay grade 14, position, and later

8

received a TWA for performing the duties of another grade 14 position.  During that time, Tuttle worked in a different section than plaintiff, and had a different supervisor.

From 2012 to 2013, the Ohio Department of Administrative Services conducted a study concerning the overuse of the Management Analyst Supervisor 1 and 2 positions, and eliminated those classifications.  Classification and Compensation Manager Nancy Jancso-Kocarek conducted an audit on plaintiff's position in order to determine the proper classification for that position.  Jancso-Kosarek determined that plaintiff's position should be classified as a Management Analyst, pay grade 30, a position within the jurisdiction of union bargaining unit 14, effective October 20, 2013.  Plaintiff's pay was not reduced when his position was reclassified.

On August 10, 2012, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  Doc. 16-1, Smith Dep., Ex. 1.  Plaintiff complained that he was not promoted as promised to a higher pay grade as a result of the PDQ study.  Plaintiff alleged that he performed additional duties previously assigned to female employees, but was not given a pay increase.  Plaintiff contended that Lisa Endicott and Cynthia Tuttle, female coworkers who performed the same or similar duties that plaintiff performed, were promoted due to a change in their duties or their performance of additional duties, but he was not.  Plaintiff also claimed that in April, 2012, Kathy Forrest was given a pay supplement to fill in for deceased employee Holly Howard, and that plaintiff was assigned some of Forrest's job duties but was not given a pay supplement.  On December 18, 2012, the EEOC closed plaintiff's file because it

9

was "unable to conclude that the information obtained establishes a violation of the statutes." Smith Dep., Ex. 2. Plaintiff filed the instant action on January 21, 2013.

III. Plaintiff's Claims

A. Standards - Claim of Reverse Discrimination

Title VII makes it unlawful for an employer "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. §2000e-2.  A case of disparate treatment discrimination may be shown by direct or by circumstantial evidence. Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Amini v. Oberlin College, 440 F.3d 350, 359 (6th Cir. 2006).  Direct evidence must prove not only discriminatory animus, but also that the employer actually acted on that animus.  Id.  Where one must draw an inference to determine the actor's motivation, the evidence is not direct. Romans v. Michigan Dep't of Human Services, 668 F.3d 826, 836 (6th Cir. 2012).

Plaintiff has not identified any direct evidence of discrimination relating to his promotion opportunities or compensation.  Plaintiff did testify that his supervisor, James Lowe, told him at some undisclosed time that "he expected more out of me because I was an ex-military guy than he did to the whole bunch of women, and he motioned to the north end of the building where all the female employees we spoke of are housed[.]"  Smith Dep., p. 102.  However, even plaintiff testified that he could not

"interpret" what Lowe meant by this comment.  Smith Dep., p. 102.
The comment on its face is not critical of plaintiff.  Isolated and
ambiguous comments such as this one are insufficient to support a
finding of direct discrimination.  White v. Columbus Metropolitan
Housing Auth., 429 F.3d 232, 239 (6th Cir. 2005).

     If there is no direct evidence of discrimination, plaintiff
must proceed under the framework set forth in McDonnell Douglas
Corp. v. Green, 411 U.S. 792 (1973).  In a case such as this one
involving allegations of reverse discrimination (discrimination
against a non-minority), plaintiff must present a prima facie case
showing: (1) that the defendant "is that unusual employer who
discriminates against the majority;" (2) that he was qualified for
the position in question; (3) that he suffered an adverse employment
action, such as failure to promote; and (4) that he was treated
differently than other similarly situated women.  See Arendale v.
City of Memphis, 519 F.3d 587, 603-04 (6th Cir. 2008); see also
Becker v. Almwood Local School Dist., 519 F.App'x 339, 342 (6th Cir.
2013).  Plaintiff must show that he is similarly situated in "all
relevant respects" to the female employees he alleges were treated
more favorably.  Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d
344, 353 (6th Cir. 1998)(emphasis in original).  If plaintiff makes
out a prima facie case, the burden shifts to the defendant to show
a legitimate, non-discriminatory reason behind its actions.  Id. at
603.  Once defendant has met its burden, plaintiff must prove that
the stated explanation was a pretext for discrimination.  Id.
Plaintiff can demonstrate pretext by showing that the proffered
reason (1) has no basis in fact, (2) did not actually motivate the
defendant's challenged conduct, or (3) was insufficient to warrant

11

the challenged conduct.  <u>Dews v. A.B. Dick Co.</u>, 231 F.3d 1016, 1021 (6th Cir. 2000).

To establish the first prong of a <u>prima facie</u> case of reverse discrimination, plaintiff must typically "'demonstrate background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" <u>Martinez v. Cracker Barrel Old Country Store, Inc.</u>, 703 F.3d 911, 915 (6th Cir. 2013)(quoting <u>Zambetti v. Cuyahoga Cmty. College</u>, 314 F.3d 249, 255 (6th Cir. 2002)).  A reverse discrimination claim carries a different and more difficult <u>prima facie</u> burden, which requires plaintiff to show that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority, and that the employer treated differently employees who were similarly situated but not members of the protected group.  <u>Briggs v. Potter</u>, 463 F.3d 507, 517 (6th cir. 2006).  "This requirement is not onerous, and can be met through a variety of means, such as statistical evidence; employment policies demonstrating a history of unlawful [gender] considerations; evidence that the person responsible for the employment decision was a minority; or general evidence on ongoing [gender] tension in the workplace.  <u>Johnson v. Middle Metropolitan Government of Nashville and Davidson Cty., Tenn.</u>, 502 F.App'x 523, 536 (6th Cir. 2012); <u>see</u> <u>also</u> <u>Treadwell v. American Airlines, Inc.</u>, 447 F.App'x 676, 679 (6th Cir. 2011)(background circumstances can include evidence that Caucasians as a class received lower pay less vacation time, less overtime or fewer promotions).  However, plaintiff may not rely on his own situation to provide the "background circumstances;" rather, some indication of impermissible

discrimination in addition to plaintiff's own allegedly poor treatment is necessary to support an inference of impropriety. Treadwell, 447 F.App'x at 679 (citing Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985)).

B. Evidence of Reverse Discrimination

Defendant argues that plaintiff has failed to present evidence sufficient to "support the suspicion that the defendant is that unusual employer who discriminates against the majority[.] Boger v. Wayne Cty., 950 F.2d 316, 324-25 (6th Cir. 1991). Plaintiff has produced statistical evidence that the ratio of women to men employed by the Department is 2:1. However, this is not a failure to hire case. Rather, plaintiff complains that he did not receive a pay upgrade for performing additional duties or the same salary supplements received by certain other women employees. Defendant notes that the same EEOC summary relied upon by plaintiff to show the 2:1 ratio also shows that men employed by the Department receive an average salary of $27.53 per hour, whereas the average salary for women employees is $26.33 per hour. This evidence does not suffice as evidence of reverse discrimination. Plaintiff has not met the first element of his prima facie case of reverse discrimination, and no genuine dispute exists as to this element.

C. Discrimination in Promotion

Plaintiff alleged in his complaint that he was discriminated against on the basis of his sex in the matter of promotions. However, he states in his memorandum contra that this is "not a promotion case per se." Doc. 29, p. 6. In demonstrating a prima facie case based on discrimination in promotion, plaintiff must show that he applied for and was qualified for a promotion, that he was

considered for and was denied the promotion, and that a female
employee received the job at the time plaintiff's request for a
promotion was denied.  White, 429 F.3d at 240.  Plaintiff
acknowledges that he did not apply for a promotion during the time
period relevant to this case.  In particular, he did not apply for
the posted position in the Veteran's Service area of the Workforce
Development Office, which, in any event, was filled by a male
employee.  Smith Dep., pp. 73, 75.

The gist of plaintiff's complaint is that although he performed
additional assigned duties competently, his position was not
reclassified as a pay grade 15 position.  Plaintiff acknowledges
that he was not denied a specific promotion, but contends that he
took on additional duties because he was told by Lowe that his
"stock was rising" and that Lowe was hopeful that plaintiff's
assumption of these duties would justify the upgrade of plaintiff's
position to a pay grade 15 position.  Plaintiff argues that he was
not given credit for taking on duties removed from incompetent
female employees, while female employees who did not perform
competently were promoted.

There is evidence that female employees were promoted to
various other grade 14 positions.  For example, in February of 2012,
Lisa Endicott was promoted from the position of Management Analyst
1, pay grade 12, to a different position, Management Analyst 2, pay
grade 14.  However, this is evidence of a promotion to a different
position, not an upgrade of the same position occupied by the
employee to a higher pay grade.  Plaintiff points to no evidence
that similarly-situated female employees had their existing
positions permanently reclassified at a higher pay grade for

14

performing additional duties.

Defendant also notes that the duties assigned to plaintiff were the result of the efforts of his supervisor, James Lowe, to create a new position for plaintiff after plaintiff's asset manager duties were reassigned to Phil Anderson, a male employee. Lowe testified that plaintiff's sole responsibility as asset manager had been to role out new asset management policy and procedures. Lowe Dep., pp. 202-203. After those responsibilities were assigned to Anderson, Lowe recommended that plaintiff be moved to another position in the Department so that he could be productive in a position in his pay grade, but Lowe was told that he would have to keep plaintiff in the IM Section. Lowe Dep., pp. 80-81. Lowe had to attempt to create a position for plaintiff as an operations manager because plaintiff did not have enough to do. Lowe Dep., pp. 170-171. Thus, the duties assigned to plaintiff were technically not extra duties, as Lowe struggled to find sufficient work for plaintiff, particularly work at a pay grade 14 level. Lowe Dep., pp. 35, 84, 164, 171, 193, 203. Lowe testified that he also monitored the workload of female employees on a daily basis to determine if extra assignments were warranted. Lowe Dep., p. 171. Plaintiff has produced no evidence that similarly-situated female employees whose duties were reassigned were not then given new duties previously performed by other supervisors.

Plaintiff contends that in light of his performance of additional duties, his pay grade 14 position should have been increased to a grade 15 position as a result of the PDQ. However, the evidence establishes that no other employee, male or female, in plaintiff's section was upgraded from a pay grade 14 to a pay grade

15

15 as a result of the PDQ study. Plaintiff says that he relied on Lowe's representations concerning the possible upgrade of his position through the PDQ study by accepting the assigned duties. However, this claim is a promissory estoppel claim, not a discrimination claim. Plaintiff has produced no evidence that Lowe arranged for pay upgrades of existing positions occupied by female employees. Plaintiff's promissory estoppel claim does not lie against the State of Ohio. See Kadar v. Ohio Dep't of Public Safety, No. 2004-06-46 (unreported), 2005 WL 2364834 at *3 (Ohio Ct. Claims Aug. 24, 2005)(promissory estoppel does not apply against state agency; attempt by supervisor to negotiate plaintiff's salary at a rate higher than permitted by statutory pay schedule was contrary to express statutory law).

Plaintiff's complaint that the assignment of new duties resulted in him working in a position without a job description in violation of Department policy is a state law matter within the purview of the State Personnel Review Board, not discrimination under Title VII. There is no evidence that similarly-situated female employees were never required to perform newly assigned duties outside the scope of their job descriptions. Finally, plaintiff also notes the fact that following the reclassification of his position from Management Analyst Supervisor 2 to that of Management Analyst within the jurisdiction of the union, he has been required to pay union dues. However, there is no evidence that similarly-situated female employees whose positions were reclassified as union positions are not required to pay union dues.

Plaintiff has failed to produce evidence sufficient to show the existence of a genuine dispute of fact regarding the existence of

a prima facie case of discrimination in promotions or due to the failure to reclassify his position in a higher pay grade.

D. Discrimination in Wage Supplements

Plaintiff's Title VII claim also relies on evidence that certain female employees received temporary work level ("TWL") and temporary work adjustment ("TWA") pay supplements, whereas he did not. James Lowe, plaintiff's immediate supervisor, testified in his deposition that an employee was eligible for a TWL if he or she assumes the duties of a vacant position that is in a higher pay grade. Lowe Dep., p. 76. Plaintiff admitted during his deposition that he did not qualify for a TWL. Smith Dep., p. 84. However, he continues to base his Title VII claim on the failure to give him a TWL, noting in his affidavit the deposition testimony of Deputy Director Carolyn Borden-Collins that "it's possible to get a TWL when you're not taking over somebody's duties entirely[.]" Borden-Collins Dep., p. 163.

This issue is resolved by Ohio statutory law. Under Ohio Rev. Code Chapter 124, state employees are compensated in accordance with statutory law. Until October 20, 2012, when plaintiff's position of Management Analyst Supervisor 2 was abolished and reclassified as that of Management Analyst under the jurisdiction of the union, plaintiff was an exempt employee. Under Ohio Rev. Code §124.152(A)(1), "each exempt employee shall be paid a salary or wage in accordance with schedule E-1 or schedule E-2 of division (B) of this section." §124.152(A)(1). Pay supplements are governed by Ohio Rev. Code §124.181. TWLs are provided for in Ohio Rev. Code §124.181(J), which states in relevant part:

> Whenever an employee is assigned to work in a higher
> level position for a continuous period of more than two

17

weeks but no more than two years because of a vacancy, the employee's pay may be established at a rate that is approximately four per cent above the employee's current base rate for the period the employee occupies the position, provided that this temporary occupancy is approved by the director.

§124.181(J). This provision clearly indicates that a TWL may be awarded only when the employee is "assigned to work in a higher level position ... because of a vacancy."

In this case, there is evidence that Kathy Forrest (Management Analyst Supervisor 1, pay grade 12) was issued a TWL to assume the duties of Holly Howard (pay grade 14), whose position became vacant when she was killed in an automobile accident on March 17, 2012. There was also evidence that from September 12, 2011, through February 23, 2013, Cynthia Tuttle (Management Analyst Supervisor 1, pay grade 12) received a TWL for assuming the duties of a vacant Management Analyst Supervisor 2, pay grade 14, position. These employees were "assigned to work in a higher level position ... because of a vacancy." §124.181(J). There is no evidence that plaintiff ever filled a vacant position with a pay grade higher than his pay grade 14 so as to be eligible for a TWL. There is also no evidence that plaintiff ever offered to perform and was qualified to perform the duties of any vacant position with a pay grade higher than his pay grade 14, but was denied that opportunity when a woman was assigned the duties of the vacant position. As there is no evidence that plaintiff ever qualified for a TWL, plaintiff has failed to demonstrate a prima facie case of disparate treatment discrimination based on the failure to give him a TWL, and no genuine dispute of fact has been shown to exist in that regard.

18

Plaintiff also contends that he was discriminated against on the basis of his sex when he was assigned additional duties previously performed by women employees, but was not given a TWA. Lowe testified that a TWA could be allowed for temporarily performing the work duties of a higher pay grade position which was not vacant. Lowe Dep., pp. 76-77. Plaintiff acknowledged that he never requested a TWA. Smith Dep., p. 85. However, plaintiff testified in his deposition that a TWA would be available if an employee performs some of the duties of a person in a position with the same or higher pay grade. Smith Dep., p. 83.

This argument is also governed by statute. The editor's notes to Ohio Rev. Code §124.181 (Baldwin's Ohio Revised Code Ann., Title 1, p. 110 (Thomson Reuters 2014 Supp.)) include language from uncodified law incorporated in various biennium budget bills. For example, 2011 H 153, §701.30, effective September 29, 2011, reads:

> Notwithstanding section 124.181 of the Revised Code, in cases where no vacancy exists, an appointing authority may, with the written consent of an exempt employee, assign duties of a higher classification to that exempt employee for a period of time not to exceed two years, and that exempt employee shall receive compensation at a rate commensurate with the duties of the higher classification.

This provision was applicable during the time period relevant to plaintiff's claims. This language indicates that a TWA applies in a case where no vacancy exists if the employee is assigned the duties "of a higher classification to that exempt employee" and such duties are assigned "with the written consent of" the employee. There is no evidence that plaintiff ever gave his written consent to be assigned the duties of a position with a higher classification. Plaintiff notes that Cynthia Tuttle (Management

19

Analyst Supervisor 1, pay grade 12) received a TWA for performing the duties of a grade 14 position after her TWL ended in February 23, 2013.  Because Tuttle received a TWA for performing the duties of a position with a higher classification, she was eligible for a TWA.  However, the evidence of record shows that plaintiff was assigned to perform part of the duties of employees in jobs with the same or lower classification as plaintiff's position.  Therefore, plaintiff was not entitled to a TWA.

The only other statutory provision which potentially authorizes an award of higher pay is found in Ohio Rev. Code §124.15(F).  That section states that "[i]f employment conditions and the urgency of the work require such action, the director of administrative services may authorize payment at any rate established within the range for the class of work, for work of a casual or intermittent nature or on a project basis" for up to three months ... subject to the approval of the director of budget and management as to the availability of funds."  §124.15(F).  Plaintiff testified that he was assigned to a project which involved consolidating three of the Department's facilities into one facility.  Smith Dep., p. 101. However, §124.15(F) only authorizes payment "at any rate established within the range for the class of work."  The evidence indicates that this consolidation project involved work within the job responsibilities of Holly Howard (pay grade 14) and Teri Ziegler (pay grade 12).  Thus, this special project involved work at or below the level of plaintiff's pay grade 14 and plaintiff was already being paid at a rate "within the range for the class of work[.]"  Plaintiff has not pointed to evidence of any instance where a female employee was given additional pay for "work of a

20

casual or intermittent nature or on a project basis" which was at or below her current pay grade level.

By statute, plaintiff was not entitled to receive a TWL or TWA for the duties he performed which were at or below his pay grade level, and no genuine dispute of fact has been shown to exist on that point.

E. Reassignment of Asset Manager Duties

Plaintiff alleges for the first time in his memorandum contra that he suffered an adverse job action when his asset manager duties were taken away from him and reassigned to another male employee. He also argues for the first time in his memorandum contra that the reassignment of his asset manager duties constituted discriminatory discipline because female employees who performed poorly either were not disciplined or were disciplined but received satisfactory ratings.

The Department correctly notes that plaintiff did not include these claims in his EEOC charge. Before filing suit in federal court under Title VII, a plaintiff must first timely file a charge of employment discrimination with the EEOC. Nichols v. Muskingum College, 318 F.3d 674, 677 (6th Cir. 2003). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 361 (6th Cir. 2010); see also Kuhn v. Washtenaw County, 709 F.3d 612, 627 (6th cir. 2013). Because EEOC complaints are liberally construed, courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge. Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 732 (6th Cir. 2006); see also Davis v. Sodexho, Cumberland College

21

<u>Cafeteria</u>, 157 F.3d 460, 463 (6th Cir. 1998)("whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim"). However, a district court lacks subject matter jurisdiction over any matters or claims outside the scope of plaintiff's EEOC complaint. <u>Elkheir v. Ashcroft</u>, 28 F.App'x 506, 507 (6th Cir. 2002).

In this case, plaintiff makes no mention in his EEOC charge of the removal of his asset manager duties, which occurred in August of 2010, <u>see</u> Smith Dep., p. 42, nor does he mention discrimination in the imposition of discipline. Rather, the allegations in his EEOC charge address the assignment of additional responsibilities to him in the fall of 2011 and the subsequent failure to increase his pay or to reclassify his position to a higher pay range as a result of those additional duties. The allegedly discriminatory removal of plaintiff's asset manager duties in 2010 and the alleged discrimination in the imposition of discipline are not a matter reasonably related to the allegations in plaintiff's EEOC charge which would prompt investigation into that matter by the EEOC. This court therefore lacks subject matter jurisdiction to consider these claims.

In addition, plaintiff's judicial complaint filed in this court contains no allegations relating to the removal of his asset manager duties or discrimination in discipline. Fed. R. Civ. P. 8 requires that a plaintiff's pleadings "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)(internal quotation marks and alterations omitted); <u>see also</u> <u>Robertson v. Lucas</u>, 753 F.3d 606,

623 (6th Cir. 2014). Thus, in <u>Joostberns v. United Parcel Services, Inc.</u>, 166 F.App'x 783 (6th Cir. 2006), the Sixth Circuit held that the district court properly dismissed plaintiff's reinstatement claim under the Family Medical Leave Act made for the first time in response to defendant's motion for summary judgment because plaintiff failed to plead this claim in his complaint. <u>See</u> <u>id.</u> at 788 (failure to reinstate claim properly dismissed where the complaint did not once mention defendant's failure to reinstate plaintiff, and failed to give defendant "fair notice" of plaintiff's reinstatement claim). Plaintiff made no mention of the removal of his asset management duties or defendant's disciplinary practices in his complaint which was filed in this case. Thus, plaintiff did not give defendant fair notice of these claims, and they are hereby dismissed.

<u>F. Equal Pay Act Claim</u>

Plaintiff also asserted an Equal Pay Act claim in his complaint. However, he did not respond to defendant's motion for summary judgment on that claim. Under Sixth Circuit law, a plaintiff is deemed to have abandoned a claim when plaintiff fails to address it in response to a motion for summary judgment. <u>See</u> <u>Brown v. VHS of Michigan, Inc.</u>, 545 F.App'x 368, 372 (6th Cir. 2013)(failure to address Equal Pay Act claim in response to summary judgment motion constituted abandonment of that claim). Therefore, plaintiff has abandoned his Equal Pay Act claim. In any event, the Sixth Circuit has held that when an Equal Pay Act claim and a Title VII claim arise out of the same set of underlying facts, both stating a charge of wage discrimination, the standards of liability under the two statutes are sufficiently similar that the disposition

with respect to the two claims should be the same.  See Crowder v. Railcrew Xpress, 557 F.App'x 487, 494 (6th Cir. 2014).  Because this court has concluded that defendant is entitled to summary judgment on plaintiff's Title VII claim, defendant is also entitled to summary judgment on the Equal Pay Act claim.

IV. Conclusion

      In accordance with the foregoing, the court concludes that no genuine dispute of fact has been shown to exist, and that Department is entitled to summary judgment on plaintiff's claims.  The motion for summary judgment (Doc. 21) is granted, and the clerk is directed to enter judgment in favor of the defendant.


Date: November 3, 2014            _____s/James L. Graham_____
                                  James L. Graham
                                  United States District Judge

24